UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
:
UNITED STATES OF AMERICA, :
:
    *Plaintiff*, :
:
    *v.* : No. 23-4253
:
ELAINE V. WOLFE, :
:
    *Defendant.* :
------------------------------------------------------x

## COMPLAINT

The United States of America, at the direction of a delegate of the Attorney General and with the authorization of a delegate of the Secretary of the Treasury, pursuant to 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C), brings this civil action to reduce to judgment the penalties assessed under 31 U.S.C. § 5321(a)(5) against Elaine V. Wolfe for her willful failure to report her financial interests in foreign bank accounts during 2006, 2007, 2008, 2009, and 2010 as required by 31 U.S.C. § 5314 and its implementing regulations. For its complaint, the United States alleges as follows:

### Jurisdiction and Venue

    1.    The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute, the United States is the plaintiff, and the action seeks recovery or enforcement of civil penalties.

    2.    Upon information and belief, the defendant Elaine V. Wolfe resides in Great Neck, New York, which is within the jurisdiction of this Court.

**Legal Duty to Report Foreign Financial Accounts**

3. Section 5314 of Title 31 of the United States Code requires United States persons, which includes United States citizens, to report certain transactions and relationships with foreign financial entities. Under the statute's implementing regulations for the periods at issue, "[e]ach person subject to the jurisdiction of the United States (except a foreign subsidiary of a U.S. person) having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country shall report such relationship to the Commissioner of the Internal Revenue for each year in which such relationship exists, and shall provide such information as shall be specified in a reporting form prescribed by the Secretary to be filed by such persons." 31 C.F.R. § 103.24.

4. To fulfill this requirement, a United States person must file a "Report of Foreign Bank and Financial Accounts," commonly known as "FBAR." For calendar years 2006, 2007, 2008, 2009, and 2010, United States persons reported their foreign account relationships on Department of the Treasury Form TD F 90-22.1.

5. On the FBAR, a United States person must disclose, among other things, the maximum value of each foreign account during the calendar year reported; the type of account; the name of the financial institution in which the account is held; the account number; and the mailing address of the financial institution in which the account is held. *See* Form TD F 90-22.1 (as revised July 2000, for the 2006 and 2007 calendar years, and as revised October 2008, for the 2008, 2009, and 2010 calendar years).

6. For the calendar years 2006, 2007, 2008, 2009, and 2010, an FBAR was due by June 30th "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 103.27(c). Consequently, FBARs

for the 2006, 2007, 2008, 2009, and 2010 calendar years were respectively due on June 30, 2007; June 30, 2008; June 30, 2009; June 30, 2010; and June 30, 2011.

7. Schedule B, "Interest and Ordinary Dividends," is an attachment to the federal income tax return (*i.e.*, IRS Form 1040, "U.S. Individual Income Tax Return") that is used for reporting, among other things, interest and dividend income. Schedule B also asks the taxpayer to check "Yes" or "No" whether the taxpayer had any financial interest in or signature authority over financial accounts located in foreign countries for the tax year in question. Schedule B refers to the FBAR filing requirement, including the Schedules B for the 2006, 2007, 2008, 2009, and 2010 tax years, and alerts the taxpayer that if he or she had an interest in, or signature or other authority over, a financial account located in a foreign country, the taxpayer should see the instructions for exceptions and filing requirements for the FBAR.

8. Section 5321(a)(5) of Title 31 authorizes the imposition of civil penalties for a willful failure to comply with the reporting requirements of § 5314. Specifically, § 5321(a)(5)(C) provides for a willful penalty equal to the greater of $100,000.00 or 50% of the balance in the account at the time of the violation.

9. The penalty under 31 U.S.C. § 5321(a)(5)(C) is subject to statutory additions, including interest and late-payment penalties pursuant to 31 U.S.C. § 3717.

**Factual Background**

10. Elaine V. Wolfe was born in Salford, Lancashire, United Kingdom in 1928.

11. Ms. Wolfe graduated from a high school in the United States. Thereafter, she returned to England and earned her Judicial Law Degree in 1950, and at that time became a barrister.

12. Ms. Wolfe married Arnold Wolfe, a United States citizen, in 1956, and thereafter moved to the United States in 1957. Together, the Wolfes had three children.

13. Ms. Wolfe became a naturalized citizen of the United States on July 13, 2005.

14. In 1937, Ms. Wolfe's father and English citizen Jacob Schlosberg opened an account with UBS AG bank in Bale, Switzerland (the "UBS AG account"). Mr. Schlosberg deposited British currency in the UBS AG account.

15. In 1945, Mr. Schlosberg brought Ms. Wolfe to the UBS AG bank in Switzerland to introduce her to the head of the department at UBS AG.

16. Prior to his death in 1958, Mr. Schlosberg set funds aside for Ms. Wolfe so that she would have money before she left for the United States in 1957. The funds were managed by a stockbroker in England.

17. In 1958, Mr. Schlossberg died, leaving his UBS AG account to Ms. Wolfe's mother, Sara Schlosberg. Mr. Schlosberg additionally left Ms. Wolfe and her brother a four-apartment residential property in Manchester, England.

18. Between 1958 and 1985, Ms. Schlosberg conducted all transactions involving, and otherwise maintained, the UBS AG account.

19. In or about 1980, Ms. Wolfe opened account No. XXXX5955 with National Westminster Bank, PLC, in England (the "National Westminster Bank account"). Ms. Wolfe used funds in the National Westminster Bank account to purchase two graves in England for herself and her husband.

20. In 1985, Ms. Schlosberg died, leaving her assets, including the funds in the UBS AG account and the three English residential properties, to Ms. Wolfe. Ms. Wolfe maintained those inherited funds in a separate account she had opened with UBS AG (the

"Second UBS AG account"). Thereafter, Ms. Wolfe sold the three residential properties and divided the proceeds equally with her brother.

21. Ms. Wolfe has a history of filing United States federal income tax returns dating back to at least the 1994 tax year.

22. In 2000, Ms. Wolfe received notice from UBS AG that the Second UBS AG account, maintained in Bale, Switzerland, was being transferred to a UBS AG bank located in Zürich, Switzerland. She thereafter traveled to UBS AG in Zürich, where she listed two of her children as beneficiaries on the Second UBS AG account. She also signed a directive dated June 8, 2000, stating: "I would like to avoid disclosure of my identity to the US Internal Revenue Service under the new tax regulations. To this end, I declare that I expressly agree that my account shall be frozen for all new investments in US securities as from 1 November 2000."

23. In 2002, Ms. Wolfe again traveled to the UBS AG location in Zürich to meet with a bank advisor, review her portfolio, and withdraw funds from the Second UBS AG account.

24. In or about 2003, Ms. Wolfe sold the four-apartment residential property in Manchester, England, that she had inherited from Mr. Schlosberg. At the time of the sale, Ms. Wolfe was the sole owner of the property, as her brother had since died. Ms. Wolfe repatriated the proceeds from that sale, £250,000.00, to a Chase Bank account in New York. Ms. Wolfe disclosed the sale to her certified public accountant for tax reporting purposes.

25. In 2003, Ms. Wolfe became dissatisfied with UBS AG. Another advisor at the bank advised Ms. Wolfe that he was leaving UBS AG and offered to manage her funds at a smaller bank. Subsequently, Ms. Wolfe traveled to Zürcher Kantonalbank in Zürich, Switzerland, and on July 1, 2003, she opened account No. XXXXXXX.578 (the "Zürcher

Kantonalbank account"), into which account she would ultimately transfer her funds from the Second UBS AG account.

26.     With respect to her opening of the Zürcher Kantonalbank account, Ms. Wolfe completed an "Investment Account Holder Questionnaire" regarding "IRS Client Information" on or about July 1, 2003, in which Ms. Wolfe listed "Winterfield" as her "Code word agreed upon" – *i.e.*, her code name for that account that was used to refer to Ms. Wolfe (and at times the account itself) in subsequent correspondence and documents.  In the questionnaire, Ms. Wolfe further responded "no" to questions concerning her status as a United States person.  Although Ms. Wolfe did not become a U.S. citizen until 2005, she had lived in the United States since 1957, and she had a history of filing joint federal income tax returns dating back to at least 1994. Despite those facts, when she filled out the foregoing questionnaire in 2003, she responded "no" to the question "Are you a U.S. resident alien?" as well as to the question "Have you lived during the current year and the preceding two years a total of at least 183 days in the USA?"  She likewise responded "no" to a question inquiring as to whether she was "a U.S. taxpayer for any other reason[,]" including as a "spouse filing jointly."  Ms. Wolfe additionally listed her country as "GB" – *i.e.*, Great Britain – and checked a box indicating that her home address did not differ from her nationality.

27.     In the account-opening documents for the Zürcher Kantonalbank account, Ms. Wolfe specified that she expected to transfer $600,000.00 from the Second UBS AG account to the Zürcher Kantonalbank account, and that the source of the funds was an inheritance from her parents.  She also completed a "Supplementary Agreement to Contracts RE Cash and Security Accounts," in which she listed her address as "32 Barley Croft Boughton Heath Chesterch [sic] 3 5 SP, United Kingdom," her nationality as "British," and her country as

"United Kingdom." She also signed a "Power of Attorney for External Asset Managers" authorizing her advisor to debit fees and expenses directly from the Zürcher Kantonalbank account.

28.     During 2006, 2007, 2008, 2009, and 2010, Ms. Wolfe traveled to Zürich and withdrew between $40,000.00 and $45,000.00 from the Zürcher Kantonalbank account twice a year, often as part of an overseas vacation with Mr. Wolfe. Ms. Wolfe was not permitted by Zürcher Kantonalbank to withdraw more than $45,000.00 from the Zürcher Kantonalbank account per trip. She used the withdrawn sums to pay for her travels and repatriated the rest to the United States for her living expenses.

29.     In October of 2011, the Zürcher Kantonalbank account was closed, and in 2012, Ms. Wolfe traveled to Zürcher Kantonalbank to retrieve the balance of the account. Ms. Wolfe then transferred the funds into her National Westminster Bank account in England and thereafter transferred the funds to a Chase Bank account in New York.

30.     For the 2006, 2007, 2008, 2009, and 2010 tax years, Ms. Wolfe jointly filed federal income tax returns with her husband, Arnold Wolfe. Those returns were prepared by Dov Zaidman, a New York certified public accountant retained by Ms. Wolfe and Mr. Wolfe to prepare their tax returns, including for the 2002 through 2011 tax years.

31.     Ms. Wolfe and Mr. Wolfe were provided questionnaire forms by Mr. Zaidman to assist him in preparing their joint federal income tax returns, including for their 2006, 2007, and 2008 tax years. Those questionnaires included a question regarding whether the Wolfes had an interest in, or signature or other authority over, a financial account in a foreign country, such as a bank account. The "No" box was checked with respect to that question for each of the 2006, 2007, and 2008 questionnaires.

32. Once Mr. Zaidman had prepared a tax return, including for the 2006, 2007, 2008, 2009, and 2010 tax years, the return was provided to Ms. Wolfe for her signature. Ms. Wolfe signed the tax returns under penalty of perjury.

33. With respect to each of Ms. Wolfe's joint federal income tax returns for the 2006, 2007, 2008, 2009, and 2010 tax years, she failed to report interest income, capital gain, or certain other income with respect to the National Westminster Bank account and the Zürcher Kantonalbank account.

34. For at least the 2006, 2007, and 2008 tax years, Ms. Wolfe's joint federal income tax return included Schedule B, "Interest and Ordinary Dividends," as an attachment. The Schedules B for those tax years included a question concerning whether Ms. Wolfe had an interest in, or signature or other authority over, a financial account in a foreign country, such as a bank account, securities account, or other financial account. The "No" box next to that query was checked on each Schedule B for those years.

35. On December 26, 2022, the IRS assessed civil fraud penalties under 26 U.S.C. § 6663 against Ms. Wolfe and Mr. Wolfe with respect to their unreported foreign bank account income for each of their 2006, 2007, 2008, 2009, and 2010 federal income tax years.

36. Ms. Wolfe failed to file an FBAR for the 2006, 2007, 2008, 2009, and 2010 calendar years.

37. In each of the 2006, 2007, 2008, 2009, and 2010 calendar years, the combined balances of Ms. Wolfe's National Westminster Bank account and Zürcher Kantonalbank account exceeded $10,000.00.

38. The balance of the Zürcher Kantonalbank account on June 30, 2006, was $937,360.28, and the year-high balance of the account was $979,432.52.

39. The balance of the Zürcher Kantonalbank account on June 30, 2007, was $952,172.07, and the year-high balance of the account was $1,074,357.33.

40. The balance of the Zürcher Kantonalbank account on June 30, 2008, was $792,694.00, and the year-high balance of the account was $900,936.00.

41. The balance of the Zürcher Kantonalbank account on June 30, 2009, was $552,795.00, and the year-high balance of the account was $598,700.00.

42. The year-high balance of the Zürcher Kantonalbank account for the 2010 calendar year was $598,700.00.

43. The year-high balance of the National Westminster Bank account $9,935.54 for the 2007 calendar year; $8,807.92 for the 2008 calendar year; $8,919.15 for the 2009 calendar year; and $8,205.15 for the 2010 calendar year.

44. The IRS determined willful FBAR penalties under 31 U.S.C. § 5321(a)(5)(C) for 2006, 2007, 2008, 2009, and 2010.  Exercising its discretion, the IRS set the penalties in the total amount of $496,447.  The IRS determined the total penalty by calculating 50% of the June 2008 balance of the Zürcher Kantonalbank (*i.e.*, 50% of $792,694.00, or $396,347.00), plus a separate, single $100,000.00 penalty with respect to the National Westminster Bank account for the 2006, 2007, 2008, 2009, and 2010 calendar years (*i.e.*, only one $100,000.00 penalty for all violation years).  The IRS then allocated that total penalty of $496,447.00 across the 2006, 2007, 2008, 2009, and 2010 calendar years, generally in proportion to the year-high account balances for those years.

45. While FBAR penalties must generally be assessed within 6 years of the date of the violation, 31 U.S.C. § 5321(b)(1), Ms. Wolfe and the IRS entered into a series of agreements extending the IRS's time to assess FBAR penalties for the 2006, 2007, 2008, 2009, and 2010

calendar years. Specifically, Ms. Wolfe consented to the following extensions of the IRS's time to assess the penalties:

    (a)    For calendar year 2007, on February 7, 2014, Ms. Wolfe signed a consent which was countersigned by the IRS on February 28, 2014, extending the assessment period to November 30, 2015;

    (b)    For calendar year 2007, on September 3, 2015, Ms. Wolfe signed a consent which was countersigned by the IRS on September 21, 2015, extending the assessment period to November 30, 2016;

    (c)    For calendar year 2008, on February 7, 2015, Ms. Wolfe signed a consent which was countersigned by the IRS on February 24, 2015, extending the assessment period to November 30, 2016;

    (d)    For calendar years 2006, 2007, 2008, and 2009, on April 7, 2016, Ms. Wolfe signed a consent which was countersigned by the IRS on April 27, 2016, extending the assessment period to June 30, 2017;

    (e)    For calendar years 2006, 2007, 2008, 2009, and 2010, on February 3, 2017, Ms. Wolfe signed a consent which was countersigned by the IRS on February 9, 2017, extending the assessment period to June 30, 2018;

    (f)    For calendar years 2006, 2007, 2008, 2009, and 2010, on February 5, 2018, Ms. Wolfe signed a consent which was countersigned by the IRS on February 12, 2018, extending the assessment period to June 30, 2020;

    (g)    For calendar years 2006, 2007, 2008, 2009, and 2010, on March 12, 2020, Ms. Wolfe signed a consent which was countersigned by the IRS on March 25, 2020, extending the assessment period to June 30, 2021; and

    (h)    For calendar years 2006, 2007, 2008, 2009, and 2010, on February 5, 2021, Ms. Wolfe signed a consent which was countersigned by the IRS on February 17, 2021, extending the assessment period to June 30, 2022.

    46.    On June 8, 2021, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321, timely assessed FBAR penalties against Ms. Wolfe for her willful failure to disclose her Zürcher Kantonalbank and National Westminster Bank accounts as follows:

| Account | Calendar Year | Penalty |
|---|---|---|
| Zürcher Kantonalbank | 2006 | $132,359.00 |
| Zürcher Kantonalbank<br>National Westminster Bank | 2007 | $145,187.00<br>$1,343.00 |
| Zürcher Kantonalbank<br>National Westminster Bank | 2008 | $121,751.00<br>$1,190.00 |
| Zürcher Kantonalbank<br>National Westminster Bank | 2009 | $80,907.00<br>$1,205.00 |
| Zürcher Kantonalbank<br>National Westminster Bank | 2010 | $11,400.00<br>$1,105.00 |
| **TOTAL:** | | $496,447.00 |

    47.    A delegate of the Secretary of the Treasury gave Ms. Wolfe notice of the FBAR assessments set forth in ¶ 46, above, and made demand for payment by letter dated June 21, 2021.

    48.    Despite notice and demand for payment, Ms. Wolfe has failed to pay the FBAR penalties assessed against her for the 2006, 2007, 2008, 2009, and 2010 calendar years. As a result, she owes $559,475.37 as of April 14, 2023, including interest and failure-to-pay penalties under 31 U.S.C. § 3717, and other statutory additions. Failure-to-pay penalties, interest, and statutory additions have continued to accrue after April 14, 2023.

49. The FBAR penalties assessed against Ms. Wolfe for the 2006, 2007, 2008, 2009, and 2010 calendar years remain unpaid, and she is liable for such amounts until they are paid in full.

WHERFORE, the plaintiff United States of America requests that the Court:

A. Enter judgment in favor of the United States of America and against defendant Elaine V. Wolfe for FBAR penalties for the 2006, 2007, 2008, 2009, and 2010 calendar years under 31 U.S.C. § 5321(a)(5), in the amount of $559,475.37 as of April 14, 2023, including interest and failure-to-pay penalties under 31 U.S.C. § 3717, and other statutory additions, plus failure-to-pay penalties, interest, and other statutory additions continuing to accrue from and after April 14, 2023; and

B. Award the United States of America its costs incurred in connection with this action, along with such other relief as justice requires.

Respectfully submitted:

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Noah D. Glover-Ettrich*
NOAH D. GLOVER-ETTRICH
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044-0055
202-514-9838 (v)
202-514-5238 (f)
Noah.D.Glover-Ettrich@usdoj.gov

Of Counsel:

BREON PEACE,
United States Attorney